UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

PAMLAB, L.L.C. AND
METABOLITE LABORATORIES,
INC.

CIVIL ACTION

VERSUS

NO: 09-7434

BROOKSTONE
PHARMACEUTICALS, L.L.C. a/k/a
ACELLA PHARMACEUTICALS,
L.L.C.

SECTION: "S" (3)

ORDER AND REASONS

**IT IS HEREBY ORDERED** that the Motion for Preliminary Injunction filed by plaintiffs, Pamlab, LLC and Metabolite Laboratories, Inc. (Doc. #8), is **DENIED**.

**IT IS FURTHER ORDERED** that Motion for Preliminary Injunction filed by intervenor, the State of Louisiana, by and through the Honorable James D. "Buddy" Caldwell, Jr., Attorney General (Doc. #65), is **DENIED**.

This matter comes before the court on motions for preliminary injunction filed by plaintiffs, Pamlab, LLC ("Pamlab") and Metabolite Laboratories, Inc. ("Metabolite"), and intervenor, the State of Louisiana, by and through the Honorable James D. "Buddy" Caldwell, Jr., Attorney General (the

"State of Louisiana").[1] Plaintiffs and the State of Louisiana seek injunctive relief that would prevent defendant Brookstone Pharmaceuticals, L.L.C. a/k/a Acella Pharmaceuticals, L.L.C. ("Brookstone") from labeling and/or marketing its product in such a manner that causes it to be substituted for plaintiffs' product.[2] Specifically, plaintiffs seek to enjoin Brookstone:

> from making or inducing others to make any false, misleading or deceptive statement of fact, or representation of fact in connection with the promotion, advertisement, display, sale, offering for sale, manufacture, production, circulation or distribution of [Brookstone's product] so as to suggest that [Brookstone's product] uses L-methylfolate, is pharmaceutically equivalent to [plaintiffs' product] or can be potentially interchanged with or substituted for prescriptions of [plaintiffs' product].

Similarly, the State of Louisiana seeks to enjoin Brookstone from:

---

[1] There are two related cases pending in other courts: (1) Merck Eprova AG v. Brookstone Pharmaceuticals, LLC a/k/a Acella Pharmaceuticals, LLC, United States District Court for the Southern District of New York, Civil Action No. 09-9684; and, (2) Sciele Pharma, Inc. v. Brookstone Pharmaceuticals, LLC a/k/a Acella Pharmaceuticals, LLC, United States District Court for the Northern District of Georgia, Civil Action No. 09-3283. Those cases involve the same issues regarding Brookstone's labeling and marketing of products that contain the folate ingredient at issue in this case. Those courts have denied their respective plaintiffs' motions for preliminary injunctions finding that there was no irreparable harm.

[2] "A preliminary injunction is an extraordinary equitable remedy that may be granted only if the plaintiff establishes four elements: (1) a substantial likelihood of success on the merits; (2) a substantial threat that the movant will suffer irreparable injury if the injunction is denied; (3) that the threatened injury outweighs any damage that the injunction might cause the defendant; and (4) that the injunction will not disserve the public interest." Sunbeam Products, Inc. v. West Bend Co., 123 F.3d 246, 250 (5th Cir. 1997). The four factors are mixed questions of fact and law. The party seeking injunction must clearly carry the burden of persuasion on all four requirements. See Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara, 335 F.3d 357, 363 (5th Cir. 2003).
    However, the State of Louisiana is not required to show irreparable harm, because under the Louisiana Unfair Trade Practices and Consumer Protection Law, Louisiana Revised Statues § 51:1407, the Louisiana Attorney General is given authority to pursue injunctive relief without showing irreparable harm against a violator. See Novelair Technologies, L.L.C. v. Harrison, 994 So.2d 57, 62 (La. Ct. App. 2008). The grant of a preliminary injunction is treated as the exception rather than the rule. Id. at 364.

> 1) directly or indirectly falsely advertising or promoting [Brookstone's product] or inducing others to substitute [Brookstone's product] for [plaintiffs' product];
>
> 2) making or inducing others to make any false, misleading or deceptive statement of fact, or representation of fact in connection with the promotion, advertisement, display, sale, offering for sale, manufacture, production, circulation or distribution of [Brookstone's product] in such fashion as to suggest that [Brookstone's product is therapeutically equivalent to [plaintiffs' product], or can be freely interchanged with or substituted for prescriptions of [plaintiffs' product];
>
> 3) placing information linking [Brookstone's product] to [plaintiffs' product] in any drug dispensing databases in the United States.

Pamlab, LLC is a Louisiana limited liability pharmaceutical company that specializes in developing prescription medical foods. Pamlab markets Metanx® ("Metanx"), an orally administered prescription medical food for the dietary management of endothelial dysfunction in patients with diabetic peripheral neuropathy.

Since January 2000, Pamlab has held an exclusive license to make, use, and sell certain oral vitamin formulations for which Metabolite owns a patent. Metanx, Pamlab's product, provides folate as L-methylfolate ("L-5-MTHF"),[3] vitamin $B_6$, and vitamin $B_{12}$ which in combination treat diabetic neuropathy by improving the overall health of the blood vessels and restoring normal blood flow. Each Metanx tablet contains 2.8 mg of L-5-MTHF, 25 mg of pyridoxal 5'-phosphate, and 2 mg of methylcobalamin. Metanx does not contain another type of folate known as D-methylfolate ("D-5-MTHF").

---

[3] The L-mehtylfolate used in Metanx is known by the brand name Metafolin®. Merck Eprova, AG owns the patent on Metafolin® and sells the ingredient to plaintiffs and other pharmaceutical companies to use in their products.

Brookstone distributes Folast® ("Folast"), which is a competing vitamin supplement that delivers folate to the human body through a chemical mixture identified as Xolafin™ ("Xolafin"). Xolafin uses a racemic methylfolate mixture known as D,L-methylfolate ("D,L-5-MTHF") that contains approximately equal amounts of L-5-MTHF and D-5-MTHF.[4] Plaintiffs and the State of Louisiana contend that the L-5-MTHF used in Metanx is superior for the treatment of diabetic neuropathy to D,L-5-MTHF used in Folast, because L-5-MTHF, a single isomer, is the naturally occurring predominant form of folate found in food and in the human body, whereas D-5-MTHF is an impure racemic mixture.

Under state and federal law governing pharmacy generic product substitution, generic products that are classified as therapeutically equivalent to the brand-name product can be substituted with the expectation that the generic product will produce the same clinical effect and safety profile as the brand-name product. A pharmacist, in his or her discretion, may fill a doctor's prescription for a brand-name product by dispensing a therapeutically equivalent generic version. A pharmacist utilizes information regarding the similarities in products that is provided by national pharmaceutical databases when making generic product substitution decisions. However, the pharmacist is ultimately responsible for reading the product information sheets and making the decision on which product to dispense.

Plaintiffs and the State of Louisiana allege that Brookstone's Folast capitalizes on Metanx's success, but is not a generic equivalent. Plaintiffs and the State of Louisiana claim that Brookstone

---

[4] L-5-MTHF and D,L-5-MTHF have different CAS numbers. A CAS number is a unique numeric identifier assigned to a chemical substance by the Chemical Abstract Service, a division of the American Chemical Society.

contacted national pharmaceutical databases and supplied false information that Folast has the same formulations as Metanx and is substitutable when in fact the formulations are different and Folast is not substitutable for Metanx. Plaintiffs and the State of Louisiana allege that Brookstone falsely markets Folast as containing the same form of folate in the same amounts as Metanx so that pharmacists would be induced to substitute Folast in prescriptions for Metanx. Plaintiffs and the State of Louisiana contend that Metanx contains only L-5-MTHF, whereas Folast contains D,L-5-MTHF in twice the amount of the L-5-MTHF contained in Metanx. Also, plaintiffs and the State of Louisiana allege that Brookstone advertises Folast as containing the same amount of pyridoxal 5'-phosphate as Metanx, when Folast has only two-thirds the amount of that substance contained in Metanx. Plaintiffs and the State of Louisiana claim that Brookstone's advertising materials and promotional claims that Folast and Metanx are the same are literally and/or impliedly false and misleading. As a result, plaintiffs brought this suit alleging claims for false advertising and unfair competition under the Lanham Act, 15 U.S.C. § 1051, *et seq.*, and the Louisiana Unfair Trade Practices and Consumer Protection Law ("LUTPA"), La. Rev. Stat. § 51:1401, *et seq*. The State of Louisiana intervened in the action to seek an injunction under LUTPA.

Plaintiffs and the State of Louisiana seek a preliminary injunction preventing Brookstone from making or inducing others to make any false, misleading or deceptive statement of fact, or representation of fact, in connection with the promotion, advertisement, display, sale, offering for sale, manufacture, production, circulation, or distribution of Folast so as to suggest that Folast uses L-methylfolate, is pharmaceutically equivalent to Metanx, or can be potentially interchanged with or substituted for prescriptions for Metanx. Essentially, plaintiffs and the State of Louisiana are

seeking an order that requires Brookstone to change the way it labels and markets Folast so that it will no longer be linked with Metanx in pharmaceutical databases.

A preliminary injunction hearing was held on March 4, 2010. At the hearing, Pamlab's Vice President of National Accounts who is also a licensed pharmacist, Marc Fluitt ("Fluitt"), testified that Pamlab changed the label on Metanx so that it would no longer be linked with Folast in the pharmaceutical databases. Fluitt testified that Pamlab now identifies the active ingredients in Metanx with "exquisite precision based upon how they're actually assayed as part of the production process" so that "there would be no way that someone could, in anyway masquerade that a racemic mixture is the same as the single isomer." Metanx's new label includes the CAS[5] number for L-5-MTHF, more specifically identifies the substance as L-methylfolate Calcium, and changes the amount of the substance from 2.8 mg to 3 mg. Fluitt testified that the two major pharmaceutical databases, First DataBank and Medi-Span,[6] that have "very important clientele,"[7] de-linked Folast and Metanx the week of the hearing as a result of Pamlab's relabeling of Metanx. He also testified that "some specific accounts have de-linked the products." Fluitt further testified that the results of the de-linking will be seen at the pharmacy level based upon the pharmacy's subscription for "auto syncing" with the database to which they subscribe.

---

[5] A CAS number is a unique numeric identifier assigned to a chemical substance by the Chemical Abstract Service, a division of the American Chemical Society.

[6] Plaintiffs' witness, Dr. Brian Reistetter ("Reistetter"), a licensed pharmacist who owns a pharmaceutical consulting firm, also testified that First DataBank and Medi-Span are the two largest pharmaceutical databases.

[7] Plaintiffs' witness, Alisha Nielsen ("Nielsen"), a pharmacy technician, who worked for First DataBank for more than 13 years, testified that First DataBank and Medi-Span supply pharmaceutical product information to "the major retail chain market, payors, HMOs, Medicaid state agencies, [and] wholesalers.

Fluitt's testimony demonstrates that plaintiffs' and the State of Louisiana's motions for preliminary injunction are moot. The "case or controversy" requirement of Article III of the United States Constitution prohibits federal courts from considering questions "that cannot affect the rights of the litigants in the case before them." Id. (citing N. Carolina v. Rice, 92 S.Ct. 402, 403 (1971)). "The mootness doctrine requires that the controversy posed by the plaintiff's complaint be 'live' not only at the time the plaintiff files the complaint but also throughout the litigation process. Id. (citing Rocky v. King, 900 F.2d 864, 866 (5th Cir. 1990)). "This means that, throughout the litigation, the plaintiff 'must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." Spence v. Kemna, 118 S.Ct. 978, 983 (1998) (internal quotation omitted).

Plaintiffs and the State of Louisiana seek an injunction that requires Brookstone to change the way it labels and markets Folast so that it will no longer be linked with Metanx in pharmaceutical databases. Pamlab has accomplished this goal by changing the label for Metanx. Fluitt testified that Folast and Metanx are no longer linked in the two largest databases, First DataBank and Medi-Span. Also, plaintiffs' witness, Dr. Brian Reistetter ("Reistetter"), a licensed pharmacist who owns a pharmaceutical consulting firm testified that other databases follow what First DataBank and Medi-Span do and the information they generate "has downstream effects on all sorts of different software that uses drug information."[8] Further, since the hearing, Gold

---

[8] Reistetter testified that if a patient has been given a substitute for a prescribed product, the pharmacist might continue to refill the prescription with the substituted product even after it becomes de-linked from the prescribed product. He also testified that some pharmacies do not receive automatic updates from the pharmaceutical databases, but rather, have their own linking methods, and that once products are linked at these pharmacies, they are "never getting unlinked because it's linked on a different code that

Standard, another pharmaceutical database has effectively de-linked Folast and Metanx. Moreover, Brookstone cannot re-label Folast with its current formulation to match Metanx's label, because Pamlab has placed the CAS number for L-5-MTHF on the label and Folast uses D,L-5-MTHF which has a different CAS number.  Therefore, Pamlab has accomplished the purpose of the requested injunction and is no longer threatened with an actual injury that only an injunction could remedy.

Plaintiffs and the State of Louisiana argue that an injunction is still warranted because the products continue to be linked at the pharmacy level.  Plaintiffs' witness, Alisha Nielsen ("Nielsen"), a pharmacy technician, who worked for First DataBank for more than 13 years, explained that when the retail pharmacy chains purchase information, such as which products are linked, from the pharmaceutical databases, it is downloaded by the corporate headquarters, integrated into the chains pharmacy system, and then disseminated to the individual stores. She also testified that when a patient presents a prescription for Metanx to the pharmacy, the pharmacy technician or pharmacist keys the relevant information into the computer system and is then presented with a "pick list" of products from which the pharmacist can choose to fill the prescription.  The "pick list," which shows the prescribed product and potential substitutes, is generated from the information purchased from a pharmaceutical database. Fluitt further explained that after the pharmacist is presented with the list of potential substitutes, he or she has an obligation to read the material on the product label to ensure that the patient is given a product that is a proper substitute for the prescribed product. Fluitt testified that what the pharmacist is "looking for is the

---

overrides this other system." He explained that as a result the de-linking in the pharmaceutical databases will eventually "clean out some of the systems overtime, but you'll never get it all."

active ingredients and are they in the right amounts." Therefore, if a pharmacist is presented with a "pick list" that still shows that Folast is a potential alternative to Metanx, when he or she reads the labels of the products,[9] he or she will find that Folast contains 2.8 mg of L-methylfolate and 25 mg of pyridoxal 5'-phosphate, whereas Metanx contains 3 mg of L-methylfolate Calcium and 35 mg of pyridoxal 5'-phosphate. Metanx's new label will alert the pharmacist that the products do not have the same active ingredients and he or she will not substitute Folast for Metanx. Pamlab's relabeling of Metanx accomplished the result for which plaintiffs and the State of Louisiana sought an injunction. Therefore, the issues presented in plaintiffs' and the State of Louisiana's motions for preliminary injunction are moot because the injunction sought by plaintiffs and the State of Louisiana would be no more effective in curing the pharmacy level substitutions of Folast for Metanx than Pamlab's relabeling of Metanx.[10]

**IT IS HEREBY ORDERED** that the Motion for Preliminary Injunction filed by plaintiffs, Pamlab, LLC and Metabolite Laboratories, Inc. (Doc. #8), is **DENIED**.

**IT IS FURTHER ORDERED** that Motion for Preliminary Injunction filed by intervenor, the State of Louisiana, by and through the Honorable James D. "Buddy" Caldwell, Jr., Attorney General (Doc. #65), is **DENIED**.

---

[9] The court must assume that the pharmacist will follow the proper protocol.

[10] There is still a case or controversy regarding plaintiffs' claims for damages.

New Orleans, Louisiana, this  28th  day of April, 2010.

_____
**MARY ANN VIAL LEMMON
UNITED STATES DISTRICT JUDGE**