UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

PAMLAB, L.L.C., ET AL.                                    CIVIL ACTION

VERSUS                                                   NO. 09-7434

BROOKSTONE PHARMACEUTICALS, L.L.C.                       SECTION  "S" (3)
A/K/A ACELLA PHARMACEUTICALS, L.L.C.

ORDER

On October 6, 2010, Plaintiffs Pamlab, Inc. and Metabolite Laboratories, Inc.'s Motion and

Incorporated Memorandum to Remove the "Highly Confidential" Designation from Defendant

Arizona Nutritional Supplements, Inc.'s Responses to Plaintiffs' Requests for Admission [Doc. #144]

(SEALED) came on for oral hearing before the undersigned.  Present were Robert Rooth on behalf

of plaintiffs and Brian Jackson and Juan Lizarraga on behalf of defendants.  After the hearing, the

Court took the motion under advisement.  Having reviewed the motion, the memoranda, the case

law and the parties' oral argument, the Court rules as follows.

I.      Background

Plaintiffs Pamlab, L.L.C. ("Pamlab") and Metabolite Laboratories, Inc. ("Metabolite")

(collectively, "plaintiffs") sued defendant Brookstone Pharmaceuticals, L.L.C. a/k/a Acella

Pharmaceuticals, L.L.C. ("Brookstone") for false advertising and unfair competition under Section

43(a) of the Lanham Act, 15 U.S.C. § 1051 *et seq.*, and common law unfair competition and

common law misappropriation under Louisiana Revised Statues § 51:1401 *et seq.*  Plaintiffs invented Metanx® ("Metanx") to help Americans who suffer from diabetes.  Metanx is an orally-administered prescription medical food for the dietary management of endothelial dysfunction in patients with diabetic peripheral neuropathy.

Brookstone distributes Folast® ("Folast"), a competing vitamin supplement that delivers folate to the human body through a chemical mixture identified as Xolafin®.  Plaintiffs allege that Brookstone's Folast capitalizes on Metanx's success but is not a generic equivalent.  Plaintiffs allege that Brookstone contacted national pharmaceutical databases and informed them that Folast has the same ingredients as Metanx and may be substituted for Metanx.  Plaintiffs claim that the formulations for Metanx and Folast are different.  Specifically, plaintiffs allege that Brookstone falsely markets Folast as containing the same form of folate in the same amount as Metanx.  Plaintiffs allege that Brookstone's advertising materials and promotional claims that Folast and Metanx are the same are literally and/or implicitly false and misleading.  This lawsuit followed.

## II.     The Parties' Contentions

### A.     Plaintiffs

Plaintiffs move the Court to remove the highly confidential designation from defendant Arizona Nutritional Supplements, Inc.'s ("Arizona") (collectively with Brookstone, "defendants") discovery responses to Plaintiffs' First Requests for Admission ("RFAs").  Plaintiffs note that the protective order in this suit provides only that a party may designate information as confidential if that party believes in good faith that the information may cause it competitive harm.  Plaintiffs argue that the RFAs address only the fact that Arizona has not performed certain tests and procedures on Brookstone's products.

Plaintiffs argue that defendants have no legitimate business interest in withholding these admissions from their customers.  Plaintiffs contend that the public has a right to know whether Folast and Neurpath-B are manufactured in accordance with good manufacturing procedures and whether Folast and Neurpath-B's shelf lives are established by testing.  Plaintiffs assert that the only reason to designate these admissions as confidential is because such admissions would seriously undermine defendants' relationship with its customers and contradict defendants' media campaign. Citing case law, plaintiffs contend that other courts have held that information concerning the manufacture, testing and labeling of prescription pharmaceutical products is not confidential or proprietary.

### B.    Defendants

Arizona notes that its responses confirm that it has conducted stability testing on Brookstone's finished products and plaintiffs only seek to remove the highly confidential designation from those responses that it hopes to use in competition to obtain an unfair advantage over defendants.  Defendants argue that plaintiffs do not seek to remove the highly confidential designations from those responses in which Arizona admits that it follows good manufacturing practices.  Defendants contend that plaintiffs know that the testing that it seeks through its requests for admission is not required for medical food manufacturers, as plaintiffs allegedly admitted through testimony at the preliminary injunction hearing before the District Court.

Defendants argue that what testing Arizona does and does not perform is non-public and proprietary.  Defendants contend that if the highly confidential designation is removed, plaintiffs will undoubtedly exploit the differences between Arizona's and plaintiffs' own manufacturing and testing procedures in the public domain.  Defendants argue that when it is clear that plaintiffs will

use the fruits of discovery for other than legitimate legal proceedings, the fruits are protected under Rule 26(c).

      **C.**      **Plaintiffs' Reply**

Plaintiffs argue that defendants wholly fail to demonstrate that the admissions reveal their confidential strategic plans, marketing plans, or research and development information. Defendants note that a protective order and the treatment of documents as non-public remains the exception to the rule of public disclosure of judicial proceedings.  Citing case law, plaintiffs note that generally, and absent good cause, a party may make public discovery materials that it has received in a lawsuit.

Plaintiffs also contend that Arizona's potential embarrassment is not good cause to designate the documents as highly confidential.  Citing case law, plaintiffs note that courts have held that a party's embarrassment or incrimination is not a basis for documents to be confidential under Rule 26.  Plaintiffs note that the very reason that they brought this lawsuit was to expose defendant's "lies" about Folast and Neurpath-B and to stop defendants' "faux" generic substitution scheme.

**III.**      **Law and Analysis**

To determine whether to disclose or to seal a judicial record, the Court must balance the public's common law right of access against interests favoring non-disclosure.  *See S.E.C. v. Van Waeyenberghe*, 990 F.2d 845, 849 (5th Cir.1993).  "Courts have recognized that the public has a common law right to access judicial records and proceedings, although the right is not absolute." *Bahwell v. Stanley-Bostitch, Inc.*, No. Civ.A. 00-0541, 2002 WL 1298777, at * 1 (E.D. La. June 10, 2002).  "Public access serves important interests, such as 'to promote trustworthiness of the judicial process, to curb judicial abuses, and to provide the public with a more complete understanding of the judicial system, including a better perception of fairness.'"  *Id.* (quoting *Van Waeyenberghe*, 990

F.2d at 849). "Accordingly, 'the district court's discretion to seal the record of judicial proceedings is to be exercised charily.'" *Id.* (quoting *Van Waeyenberghe*, 990 F.2d at 848). Although countervailing interests may outweigh the right of public access, the party seeking to overcome the presumption of access bears the burden of showing that the interest in secrecy outweighs the presumption. *Leucadia, Inc. v. Applied Extrusion Techs., Inc.*, 998 F.2d 157, 165 (3d Cir.1993). The decision as to access is left to the discretion of the trial court, *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 599 (1978), but any doubt must be construed in favor of disclosure. *Marcus v. St. Tammany Parish Sch. Bd.*, No. Civ.A. 95-3140, 1997 WL 313418, at *5 (E.D. La. June 9, 1997) (citing *Grove Fresh Distributors, Inc. v. Everfresh Juice Co.*, 24 F.3d 893, 897 (7th Cir. 1994)).

In *Brown & Williamson Tobacco Corp. v. Federal Trade Commission*, the Sixth Circuit elaborated on the public interest in disclosure and a corporation's potential embarrassment should documents be made public:

> Simply showing that the information would harm the company's reputation is not sufficient to overcome the strong common law presumption in favor of public access to court proceedings and records. In *Joy v. North*, 692 F.2d 880 (2d Cir. 1982), for example, the special litigation committee of a bank sought to have their report placed under court seal. The report recommended to the corporation that a stockholder derivative suit be terminated. The committee argued in part that the report contained a candid review of internal business operations of the bank which, if made public, would adversely affect the bank and the local community. Lifting the District Court's seal, the Second Circuit said:
>
> > [A] naked conclusory statement that publication of the Report will injure the bank in the industry and local community falls woefully short of the kind of showing which raises even an arguable issue as to whether it may be kept under seal. The Report is no longer a private document. It is part of a court record. Since it is the basis for the adjudication, only the most compelling reasons can justify the total foreclosure of public and professional scrutiny. The potential harm asserted by the corporate defendants is in disclosure of poor management in the past. This is hardly a trade secret.
>
> *Id.* at 894. The Second Circuit was responding in the case above to the natural desire of parties to shield prejudicial information contained in judicial records from

5

> competitors and the public.  This desire, however, cannot be accommodated by
> courts without seriously undermining the tradition of an open judicial system.
> Indeed, common sense tells us that the greater the motivation a corporation has to
> shield its operations, the greater the public's need to know.  In such cases, a court
> should not seal records unless public access would reveal legitimate trade secrets, a
> recognized exception to the right of public access to judicial records.

710 F.2d 1165, 1179-80 (6th Cir. 1983); *see also Cipollone v. Liggett Group, Inc.*, 113 F.R.D. 86,

90 (D.N.J. 1986) ("In essence, defendants now argue that if the truth be known and discovery

disclosed it might prove embarrassing and affect the market price of defendants' stock. Such a

sweeping allegation, however, does not reach the level of specificity that the Third Circuit has

emphasized is required by Rule 26(c).").

Here, defendants have argued only that disclosure of their admissions will embarrass them

and injure their economic livelihood.  As the case law demonstrates, however, such a generic

allegation does not meet the standard to keep documents under seal and confidential under Rule

26(c).   Such an allegation does not outweigh the public's interest in an open and honest judicial

process.  A review of the admissions or denials reveals that they do not disclose proprietary or trade-

secret information.  Accordingly, and because embarrassment or some generically-alleged financial

injury in the economic market does not overcome the strong presumption in favor of disclosure, the

Court grants the motion.

At the oral hearing, however, defendants raised an argument that has caused this Court some

consternation.  Both parties in this suit have alleged that the other party has waged a negative media

campaign against it.  At oral argument, defendants explicitly expressed a grave concern that

plaintiffs may take the admissions, disseminate them to the public and, in effect, bring about

plaintiffs' desired result before a jury of the parties' peers has a chance to weigh the issues here.

Having reviewed the motions, the memoranda and the pleadings in this suit, this Court finds that

6

good cause exists for a protective order in this case given the potential for widespread dissemination of discovered information to the public.  Accordingly, the Court will enter a protective order in favor of both parties that precludes dissemination to the public of information gained through pre-trial discovery.[1]

The Court finds support for this compromise in *Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984).  There, the district court compelled production of many of the plaintiff's financial records but simultaneously issued a protective order that prevented dissemination of the financial records by the defendants if the defendants discovered the financial information through pre-trial discovery. *Id.* at 24-26.  The Supreme Court framed the issue as follows:

> The critical question that this case presents is whether a litigant's freedom comprehends the right to disseminate information that he has obtained pursuant to a court order that both granted him access to that information and placed restraints on the way in which the information might be used.

*Id.* at 32.  Even in the face of a challenge to the district court's order under the First Amendment, the Supreme Court had no trouble affirming a protective order (1) entered under Rule 26(c) for good cause, (2) limited to the context of pre-trial civil discovery and (3) that did not restrict the dissemination of the information if gained from other sources. *Id.* at 37.  While the Supreme Court recognized the breadth of pre-trial civil discovery, it also noted that "[i]t does not necessarily follow, however, that a litigant has an unrestrained right to disseminate information that has been obtained through pre-trial discovery." *Id.* at 31.

While the Court recognizes the factual dissimilarities between the *Rhinehart* opinion and this suit, the underlying reasoning in *Rhinehart* supports the issuance of a protective order here.  The

---

[1]     This Court has the authority to enter a protective order *sua sponte*. *See Seminara v. City of Long Beach*, 68 F.3d 481, 1995 WL 598097, *4 (9th Cir. Oct. 6, 1995).

Court finds that this compromise will work well in this suit. This Court's order protects the right of the public to an open judicial system. Should any member of the public decide that he or she wants to research the underlying nature of this suit, he or she has the right do so. At the same time, this Order protects the rights of the parties to be free from a negative media campaign that poses the potential result of trying the suit in the public before a jury of the parties' peers has the opportunity to weigh the evidence and to arrive at an appropriate and open judicial remedy. Accordingly,

**IT IS ORDERED** that Plaintiffs Pamlab, Inc. and Metabolite Laboratories, Inc.'s Motion and Incorporated Memorandum to Remove the "Highly Confidential" Designation from Defendant Arizona Nutritional Supplements, Inc.'s Responses to Plaintiffs' Requests for Admission [Doc. #144] (SEALED) is GRANTED.

**IT IS FURTHER ORDERED** that a protective order shall issue as outlined above.

New Orleans, this 22nd day of October, 2010.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**